In re:
ANTHONY R. WILSON and
MYRA K. WILSON,
    Debtors.                                                    No. 7-06-11807 SL

In re:
DIANA L. OBERLANDER and
NICHOLAS A. OBERLANDER,
    Debtors.                                                    No. 7-06-11824 SL

In re:
MATTHEW J. RIZZUTO,

     Debtor.                                                   No. 7-06-11892-SA

**MEMORANDUM OPINION AND ORDER
CONCERNING PROPOSED REAFFIRMATION
<u>AGREEMENTS WITH FORD MOTOR CREDIT COMPANY</u>**

These matters came before the Court upon the submission by the parties ("Debtors" and "FMCC" [Ford Motor Credit Company] respectively) of proposed reaffirmation agreements or, in the Rizzuto case, of a proposed consent order approving a reaffirmation agreement. For the reasons cited, the Court declines to "review" the reaffirmation agreements, as that term is used in §524(m), enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[1], and also declines to approve or disapprove the reaffirmation agreements.[2]

---

[1] Pub. L. No. 109-08, 119 Stat. 23.

[2] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J); and these are findings of fact and conclusions of law as may be required by
                                                                       (continued...)

**Background**

In each of these cases, the respective Debtors were represented by counsel. In each case the Debtors filed statements of intention which recited that "Debtor will retain collateral and continue to make regular payments."[3]

The Wilson agreement (doc 13) is for a 2005 Ford Escape, NADA retail value of $18,000, for $10,657 at 4.9%, resulting in 49 monthly payments of $239. Part D recites that the Debtor's[4] income is $4,234 and expenses are $3,985, for a surplus of $249, which exceeds the proposed monthly payment by $10. However, Schedules I and J show income of $7,267 and expenses of $8,452 for a monthly deficit of $1,184.[5]

---

[2](...continued)
Rule 7052 F.R.B.P.

[3] These statements appear not to comply with what Congress seems to have intended when it enacted §§521(a)(trailing paragraph) and 362(h) is not an issue in these cases. See In re Rowe, 342 B.R. 341, 351 (Bankr. D. Ks. 2006) ("Congress by amending §§ 521 and 362 intended to and was successful in eliminating the 'fourth option'...."). However, that is not an issue in these cases.

[4] The Wilsons are now divorced and only Ms. Wilson seeks to reaffirm the debt. In consequence the budget numbers in Part D and the jointly filed Schedules I and J differ considerably.

[5] The reaffirmation agreement form used in all three cases is the current B240 suggested by the Administrative Office of the United States Courts, with Part D being supplemented by the disclosure required by NM IBR 4008. A portion of that rule requires as follows: "The debtor's statement required under §524(k) shall be accompanied by a statement of the total income and total expense amounts stated on schedules I and J. If there
(continued...)

Case 06-11807-s7    Doc 22    Filed 01/31/07    Entered 01/31/07 16:19:44 Page 2 of 10

The Oberlander agreement (doc 9) is for a 2004 Ford Mustang, NADA retail value $12,000, for $12,600 at 4.5%, resulting in 42 monthly payments of $316. Part D recites that the Debtors' income is $2,698 and expenses are $2,382, resulting in a surplus of exactly $316.[6] Schedules I and J show income of $2,698 and expenses of $3,459 for a monthly deficit of $761.

The Rizzuto agreement (doc 13) is for a 2005 Ford F-150 truck, NADA retail value of $25,450, for $33,681 at 8.9%, resulting in 59 payments of $693. Part D recites that the Debtor's income is $4,107 and expenses are $3,200, resulting in a surplus of $907. Schedules I and J show income of $4,107 and expenses of $4,481 for a monthly deficit of $374.

In each case, Debtors' counsel have executed Part C of the respective agreements. In the Wilson and Oberlander cases, Debtors' counsel has hand-checked the box which recites:

---

[5](...continued)
is a difference between the income and expense amounts stated on schedules I and J and the statement required under §524(k), the accompanying statement shall include an explanation of any difference."

[6] Counsel for Debtors explained that after the receipt of the reaffirmation agreement forms from FMCC's counsel, they each met with their respective clients, determined with the clients that retaining these vehicles on these terms were the best the clients could do to ensure they had reliable transportation, and worked with the clients to revise their budgets to be able to afford the payments. Nothing in this opinion is intended to second-guess counsels' advice to their clients or the judgments made by counsel and clients in seeking to reaffirm.

> A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payments under the Reaffirmation Agreement.

In the Rizzuto case, a "typewritten" (to use a quaint but descriptive adjective) "X" has been inserted in the same box. Mr. Rizzuto's counsel did not recall one way or the other whether he had checked that box before sending it back to FMCC's counsel.[7]

As a result of an earlier preliminary hearing on the Wilson and Oberlander agreements, the Court had learned that FMCC's counsel had required that the undue hardship box be checked as a condition for FMCC to agree to the reaffirmation agreement. The demand was contained in a fax sent by FMCC's counsel's legal assistant to Wilson's and the Oberlanders' counsel which stated in relevant part exactly as follows:

> As my phone message – We cannot file these [reaffirmation agreements] unless you check the box indicating a presumption of undue hardship --
> Please call to discuss or I have been instructed to file Motions for Relief.

At the earlier preliminary hearing the Court had asked counsel for those three debtors for a copy of the fax, and counsel subsequently filed a copy of the fax as an exhibit in each case (docs 20 and 15 respectively).

---

[7] Not that it makes a difference; clearly both counsel had agreed to have the Court review or at least approve the agreement.

Page 4 of 10

The proposed stipulated Rizzuto order contained the following finding:

> Based upon the Debtor's pre-petition budget, the reaffirmation may have constituted an "undue hardship." The Reaffirmation Agreement explained that the Debtor's pre-petition budget included substantial payments made on his home mortgage and utilities; however, because of a divorce, the Debtor has moved from this residence and is no longer making mortgage payments or utility payments. Based on the post-petition budget, the Debtor can afford the payments provided for in the Reaffirmation Agreement....
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows: The Reaffirmation Agreement between the Debtor and Ford Motor Credit Company is hereby approved pursuant to 11 U.S.C. §§524(c), (k) and (6)(A) (Part D) and (7)....

Having reviewed both the copy of the fax and the language of the stipulated order, the Court set all three of these matters for (continued) preliminary hearings on January 29, 2007. At the Wilson and Oberlander hearings FMCC's counsel candidly confirmed the Court's surmise, that FMCC sought a §524(m) "review" or finding for each of these three agreements with the idea that the Court's imprimatur would make it more difficult for a debtor to dispute or escape from the binding effect of the reaffirmation agreement at some point in the future.

**Analysis**

11 U.S.C. §524(m)(1) provides as follows:

> Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as

Page 5 of 10

Case 06-11807-s7    Doc 22    Filed 01/31/07    Entered 01/31/07 16:19:44 Page 5 of 10

shown on the debtor's completed and signed statement in
support of such agreement required under subsection
(k)(6)(A) [Part D] is less than the scheduled payments
on the reaffirmed debt.  This presumption shall be
reviewed by the court.  The presumption may be rebutted
in writing by the debtor if the statement includes an
explanation that identifies additional sources of funds
to make the payments as agreed upon under the terms of
such agreement.  If the presumption is not rebutted to
the satisfaction of the court, the court may disapprove
such agreement. No agreement shall be disapproved
without notice and a hearing to the debtor and
creditor, and such hearing shall be concluded before
the entry of the debtor's discharge.

In at least one respect, this portion of the statute is clear[8]: the presumption of undue hardship which mandates Court "review" arises only from the numbers in Part D.  That the analogous numbers from Schedules I and J differ from those in Part D is irrelevant for purposes of the "review".  Thus it is simply not accurate to check the "undue hardship" box if the Part D numbers do not show a deficit when the reaffirmed monthly payment is taken into account.  What FMCC is doing, therefore, is in effect procuring a false statement.  Using its economic leverage on the debtors, it is pressuring Debtors' counsel to inaccurately or even falsely certify by their signatures

---

[8] Overall the statute is "stubbornly obtuse" and the form that tracks it "a disaster".  <u>In re Mendoza</u>, 347 B.R. 34, 40 and n.11 (Bankr. W.D. Tex. 2006) (illustrating the administrative difficulties with the statute and the form and suggesting procedures to effectuate the statute).  <u>See generally</u> David B. Wheeler and Douglas E. Wedge, <u>A Fully Informed Decision: Reaffirmation, Disclosure and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005</u>, 79 Am. Bankr. L.J. 789 (2005).

Case 06-11807-s7    Doc 22    Filed 01/31/07    Entered 01/31/07 16:19:44 Page 6 of 10

something that simply is not true.  See Rule 9011(b) F.R.B.P.[9];
see also §526(a)(2) ("A debt relief agency shall not...make any
statement...that is untrue or misleading....").  Should the Court
encounter another instance of this behavior by FMCC, it will
issue an order to show cause why FMCC should not be sanctioned.

    The fact that NM IBR 4008 requires the additional disclosure
of the schedule I and J figures does not change the statute's
clear instruction to look only at the specified Part D numbers in
determining whether there is a presumption of undue hardship.  It
is true that NM IBR 4008 in effect adds the schedule I and J
numbers to Part D of the local version of the B240 form, but
§524(m) refers only to the specified language of §524(k)(6)(A)
and not to any additions required by a local rule.  It is also
true that, when a debtor is not represented by counsel and the
Court is reviewing the file in order to make the reaffirmation
decision on behalf of the debtor as required by §524(c)(6)(A),
the Court will look at virtually the entire file, including most
obviously schedules I and J.  See, for example, In re Payton, 338
B.R. 899 (Bankr. D. N.M. 2006) (full review of debtors'
circumstances in determining whether to approve reaffirmation

---

[9] In this decision the Court does not consider whether the
counsel involved should have done what they did, or how debtors'
counsel would have brought this to the attention of the Court
without endangering their clients' prospects for post-bankruptcy
economic survival.  The Court is familiar with all three counsel
as ethical lawyers.  The focus of this decision instead is on
FMCC, whose actions are the root of the problem.

Case 06-11807-s7    Doc 22    Filed 01/31/07    Entered 01/31/07 16:19:44 Page 7 of 10

agreement).  But these debtors had counsel, a consequence of which is that the Court's review is limited to any review both required and limited by §524(m).  See In re Laynas, 345 B.R. 505, 512 (Bankr. E.D. Pa. 2006)(§524(m) review required regardless of counsel if presumption arises.) None of these facts provides an excuse for FMCC to ignore the statute and ask a debtor's counsel to make an inaccurate or false statement in the reaffirmation agreement.

FMCC is of course entitled to not enter into a reaffirmation agreement with a debtor, even if the debtor proposes to reaffirm on the original contract terms.  §524(c) ("An agreement between a holder of a claim and the debtor....) (Emphasis added.); see §362(h)(1)(B) (providing that if the debtor has timely and correctly filed a statement of intention to reaffirm the debt on the original contract terms and the creditor refuses to reaffirm, the automatic stay is not terminated).  The Code also allows FMCC to seek stay relief before the discharge is entered and the case is closed, or to wait until those events have taken place and the stay expires on its own.[10]  And, candidly, probably nothing in the

---

[10] Nothing in this decision is intended to rule on whether a debtor who has stayed current on her payments and has maintained insurance on the vehicle has a cause of action under nonbankruptcy law if the creditor repossesses the vehicle before or after the case closes.  See In re Laynas, 345 B.R. at 517 and n.11; In re Rowe, 342 B.R. at 350 ("The creditor's right to foreclose on the collateral is controlled by the security agreement and state law.").

Bankruptcy Code prevents Ford from punishing (that is, attempting to regain possession of the vehicle from) a represented debtor in retaliation for the Court's obstreperousness in not reviewing a reaffirmation agreement when Part D does not raise a presumption of undue hardship. The existence of all of these remedies merely underscores that FMCC has no business pursuing its unlawful course of action.

**Conclusion and Order**

Following the dictate of §524(m), the Court is not required (or even permitted) to "review" the presumption of undue hardship in these cases since it is not raised. And since each Debtor was represented by counsel in making the reaffirmation agreement, the Court will also not approve or disapprove any of the agreements, as would otherwise be required by §524(c)(6)(A).[11]

IT IS THEREFORE ORDERED that the Court will not review any of these reaffirmation agreements with FMCC (Wilson – doc 13; Oberlander – doc 9; Rizzuto – doc 13), nor will it approve or

---

[11] This ruling is not intended to suggest that, had Debtors not been represented by counsel in make these agreements, the Court would not have approved them. Were the various Debtors to have purchased vehicles postpetition to replace these vehicles, the Debtors would have incurred debts that of course would not be discharged in their pending chapter 7 cases. And it is unlikely that Wilson or the Oberlanders could obtain better interest rates and prices than contained in the reaffirmation agreements. On the other hand, there may be other factors that would militate against approving these agreements. Whether such factors exist is not known, since the Court has not conducted the sort of examination that might uncover such factors or disclose that there are none.

Page 9 of 10

Case 06-11807-s7    Doc 22    Filed 01/31/07    Entered 01/31/07 16:19:44 Page 9 of 10

disapprove any of these agreements, whether by stipulated order or otherwise.

_/s/ James S. Starzynski_
Honorable James S. Starzynski
United States Bankruptcy Judge

copies to:

Ford Motor Credit Company
c/o Atty Allan L. Wainwright
920 Lomas NW
Albuquerque, NM 87102

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Louis Puccini, Jr
PO Box 30707
Albuquerque, NM 87190-0707

Matthew J Rizzuto, Debtor
3313 Red Rock Court
Rio Rancho, NM 87144-6598

Linda S. Bloom
Trustee
PO Box 218
Albuquerque, NM 87103-0218

Anthony R. Wilson
P.O. Box 152
High Rolls Mountain, NM 88325

Myra K. Wilson
P.O. Box 152
High Rolls Mountain, NM 88325

Oralia B Franco
650 East Montana Suite E
Las Cruces, NM 88001-3100

Kieran F. Ryan
Trustee
PO Box 26
Las Cruces, NM 88004-0026

Diana L. Oberlander
505 5th Street
Tularosa, NM 88352

Nicholas A. Oberlander
505 5th Street
Tularosa, NM 88352

Philip J. Montoya
Trustee
PO Box 159
Albuquerque, NM 87103